IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dashay Jones, et al.,　　　　　　　　　　　　　　　Case No. 3:18CV1903

　　　　　Plaintiffs

　　　　　　v.　　　　　　　　　　　　　　　　　　**ORDER**

Motel 6 Operating L.P.,

　　　　　Defendants.

　　　　Plaintiffs, who are African-American, are former occupants of two rooms at a Motel 6 in Huron Township, Erie County, Ohio.

　　　　The defendants are Detective Ronald Brotherton of the Sandusky, Ohio, Police Department and three affiliated entities, which I refer to collectively as Motel 6, Motel 6 Operating L.P., G6 Hospitality LLC, and S&S Realty Ltd.

　　　　Plaintiffs' Second Amended Complaint (Doc. 38) asserts multiple claims: 1) via 42 U.S.C. § 1983, violations by Det. Brotherton and Motel 6 of the Fourth Amendment; 2) violation of Article I, § 14 of the Ohio Constitution; 3) violation by Motel 6 of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.02; 4) a race-based conspiracy between Det. Brotherton and Jamie Barber, manager of the Huron Motel 6, to violate 42 U.S.C. § 1981 and 42 U.S.C. § 1985; 5) state law breach of contract by Motel 6; 6) state law violation by Motel 6 of false imprisonment; 7) state law invasion of privacy by; respondeat superior as to Motel 6 for Ms. Barber's actions; and 8) state law intentional infliction of emotional distress; 9) uber-

corporate liability among the Motel 6 entities for the acts of the operator of the Huron Motel 6 (G6 Hospitality).

Pending are their motions for summary judgment. (Docs. 51 (Brotherton), 56 (Motel 6)).

For the reasons that follow, I grant Brotherton's motion in part and deny it in part and I grant Motel 6's motion in toto.

## Background

On January 3, 2017, the plaintiffs were registered guests at the Huron Motel 6. On that day, Det. Brotherton received an anonymous tip that plaintiff Jones was involved in trafficking in drugs at Motel 6, which is outside Brotherton's Sandusky jurisdiction. He contacted the Erie County Sheriff's Department, thereby, apparently, making the investigation joint. Then he and three Sandusky P.D. colleagues went to a Wendy's parking lot across the street from the motel.

Det. Brotherton saw Jones enter the motel. He and the three Sandusky officers also went into the motel. Det. Brotherton asked Jamie Barber, the Motel 6 manager, where Jones had gone; she told him down the hallway to the right. She also told him that only two rooms down the hallway were occupied. Which they were – by the plaintiffs. On learning that information, and that plaintiffs Green and Jones were in one room and plaintiffs Valiant and Doto in the other, the officers likewise headed in that direction.

The officers went to the room registered in Green's name. One knocked. Green went to the door. On looking through the peephole, she saw it was covered by someone's finger. Thinking it was Jones, she opened the door.

The four officers entered the room, doing so without Green's permission – or that of anyone else. The record does not indicate when they identified themselves as police officers or

2

how they did so. They were armed, but in plain clothes, and at no time displayed any weapons. They did not pat anyone down or, at any time, search or otherwise touch anyone.

Det. Brotherton asked Ms. Green for permission to search the room. Because she was scared of being confronted by the four officers, she consented. After the ensuing search uncovered nothing incriminating, Det. Brotherton asked permission to search Green's car; again, she consented. Again, Det. Brotherton found nothing incriminating.

At some point before the officers' entry into Ms. Green's room, Jones had left the motel. At Det. Brotherton's request, another officer stopped Jones for a traffic violation. A drug detection dog alerted to the scent of drugs. An ensuing search discovered drugs and he was arrested.

## Discussion

### 1. Constitutional Issues

The plaintiffs assert four constitutional claims, three under the Fourth Amendment, the other under the Ohio Constitution. None has merit.

#### A. Fourth Amendment

##### i. Entry

No principle is more firmly embedded in our constitutional jurisprudence than the requirement that offices must, absent consent or some other exception, have a search warrant before entering private premises. *E.g., Georgia v. Randolph*, 547 U.S. 103, 109 (2006). The warrant requirement applies to hotel rooms, *Johnson v. United States*, 333 U.S. 10, 17 (1948) and motel rooms. *United States v. Killebrew*, 560 F.2d 729, 733 (6th Cir.1977).

An officer who enters private premises without a valid search warrant is, as a general rule, not entitled to qualified immunity. *Groh v. Ramirez*, 540 U.S. 541, 563-64 (2004). If the

3

government is relying on consent to enter, such permission "must be voluntary and freely given." *Bumper v. North Carolina*, 391 U.S. 543, 544 (1968).

An ambiguous gesture alone is not enough. *Compare Turk v. Comerford*, 488 Fed.Appx. 933, 942, 2012 WL 2897476, at *7 (6th Cir. 2012) ("turning the deadbolt may have shown that [the defendant] was willing to talk with the officers face-to-face. But, without more, there is nothing about unlocking a door that demonstrates consent—'unequivocal, specific and intelligently given." (citation omitted) and *United States v. Carter*, 378 F.3d 584, 589 (6th Cir.2004) (en banc) (stepping aside from doorway leaving officers clear path to enter, after being asked for consent to search, was valid consent)).

The principle enunciated in *Bumper, supra*, was "clearly established" well before January 3, 2017. Thus, under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), if the jury finds that Ms. Green did not consent, Det. Brotherton cannot find refuge from an adverse judgment in his claim of qualified immunity.

Only if Det. Brotherton can convince the jury that a reasonable officer in his circumstances would have been mistaken as to whether Ms. Green had unequivocally consented to his warrantless entry could he find sanctuary in qualified immunity. Cf. *Harris v. Klare*, 902 F.3d 630, 641–42 (6th Cir., 2018). (citing *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).

Viewing the record most favorably for the plaintiffs, I conclude that a rational jury could find that Det. Brotherton could not have reasonably apprehended that Ms. Green was willing to let him and the three other officers into her room. In which case, qualified immunity would not protect Det. Brotherton from an award of damages in plaintiffs' favor.

### ii. Fourth Amendment: Searches

To determine whether Ms. Green gave valid consent, uninfluenced by the circumstances then existing in her room, the jury will have to determine whether, if it finds she did not consent to the officers' entry, the taint of that entry had become attenuated. If it had not, then the seriatim consents to search the room and her car were "fruit of the poisoned tree." *See e.g., United States v. Turner*, 2020 WL 3868871, at *4 (E.D. Ky. 2020) (illegality of entry vitiated ensuing consent to search) (citing *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008)).

Even if the jury finds that the initial entry was lawful, thereby mooting the taint issue, it will have to determine whether, absent that precedent taint, Ms. Green's consent to the two searches was uncoerced in light of the totality of the circumstances. Among the circumstances are that the officers were in plain clothes, were not verbally or physically abusive, did not pat anyone down, or handcuff the plaintiffs.

On the other hand, they had entered only after concealing, by means of the finger on the peephole, their identity and badge number and they had not said who they were or requested permission to enter before Ms. Green opened the door. Taking these factors into account, along with the unlikelihood that any of the room's occupants would have considered him- or herself free to take leave unimpeded from the four officers.

If the jury concluded that those circumstances outweighed those that favor a finding of voluntary consent, then the jurors would have to decide, under *Harris*, *supra*, whether a reasonable officer in Det. Bretherton's position could have mistakenly believed, in good faith, that Ms. Green had given valid consent to the searches of the room and her car.

A rational jury could find that Ms. Green had not validly consented to having her room and car searched. This is especially so if the jury found that the officers had violated the Fourth Amendment because they went into the room without Ms. Green's consent.

5

Even if they had had prior permission to enter, the facts remain disputed as to the validity of Ms. Green's consent and Det. Brotherton's good faith understanding that she had given valid consent.

All of which means that the issue of Det. Brotherton's qualified immunity is also for the jury to decide. In the meantime, he is not entitled to summary judgment.

### iii. Acquisition of Registration Information

Plaintiffs claim that both Det. Brotherton and Ms. Barber violated the Fourth Amendment when he requested, and she gave him, the plaintiffs' motel registration information.

The problems with this contention are: 1) as to Det. Brotherton, they had no reasonable expectation of privacy in the information once they gave it to Ms. Barber; and 2) neither Ms. Barber nor Motel 6 is amenable to a § 1983 suit because neither is a state actor.

First, as to Det. Brotherton: An individual who voluntarily provides information to a third party thereafter does not have, as to that third party, a reasonable expectation of privacy in that information. *E.g., Smith v. Maryland*, 442 U.S. 735, 744 (1979), *see also United States v. Miller*, 425 U.S. 435, 443, (1976). At that point, the third-party controls what happens to the information and can do with it what it will.

This doctrine applies when a police officer wants to learn information. The officer can ask the third party to tell him or her what it is, or the officer can ask to see the information or have copies of it. It is up to the third party to acquiesce or not as it sees fit.

This applies to a motel's information about its guests, so that, when an officer asks for such information, he can do so without violating the Fourth Amendment. *E.g., United States v. Sesay*, 937 F.3d 1146, 1152 (8th Cir. 2019) (examination of guest registry*); United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000); *United States v. Willis*, 759 F.2d 1486, 1498 (11th

6

Cir.1985). The guest does not even have standing to complain about such disclosures. *Willis, supra*, 759 F.2d 1498. Thus, what the guest gave up voluntarily the motel can give away voluntarily without injury to any interest – Fourth Amendment or otherwise – that the guest might subjectively believe he or she still has in that information.

Nothing in *City of Los Angeles, California v. Patel*, 576 U.S. 409, (2015) is to the contrary. That case involved a municipality's attempt, over the owner's Fourth Amendment objection, to compel the owner involuntarily to produce its records. The Court upheld the owner's objections. In other words, if the owner holder of information in which it has a proprietary interest wants to give it away, that is up to it; but the government cannot, absent Fourth Amendment-compliant process, compel the owner to involuntarily produce such information.

The situation here differs from *Patel* in that Ms. Barber willingly let Dt. Brotherton learn the registration information. That was up to her to decide, and not up to him to do any more than ask, which is all the record shows he did.

Second: Section 1983 suits can only be brought against someone or some entity acting "under color of law." Private individuals, like Ms. Barber, and private corporations, like Motel 6, are not "state actors." They act on their own behalf, not the state's. Thus, Motel 6 is not amenable to suit under § 1983. *See, e.g., Manhattan Community Access Corporation v. Halleck*, --- U.S. ---, ---, 139 S.Ct. 1921, 1926 (2019).

### B. Ohio Constitution

Article I, § 14 of the Ohio Constitution's Bill of Rights, which essentially duplicates the Fourth Amendment of the Federal Constitution, does not create a private cause of action. *E.g.,*

*Grimm v. Cappelli*, 2020 WL 1676921, at *2 (S.D. Ohio, 2020) (noting that courts have "routinely held" that § 14 does not provide a private right of action).

That being so, there is no merit to plaintiffs' claim under that provision.

### 2. Statutory Claims: Request for and Acquisition of Plaintiffs' Registration Information

Plaintiffs base the remainder of their claims on the fact that Det. Brotherton sought, and Ms. Barber gave him, information about the plaintiffs.

I discuss each of these claims in turn and find that none have merit.

### A. Civil Rights Conspiracies

Plaintiffs claim that Det. Brotherton, in asking for the information, and the motel employee, in giving it, engaged in two race-based conspiracies: 1) to discriminate against the plaintiffs because they are African-American, in violation of 42 U.S.C. § 1981; and 2) to deprive them of their coequal right vis-a-vis Caucasians to contract and enjoy the benefits thereof in violation of 42 U.S.C. § 1985.

As defendants point out, plaintiffs have produced nothing – no evidence of any sort – beyond the bald assertions in their complaint that the defendants participated in two race-based conspiracies in violation of the Civil Rights Acts. And the allegations in the complaint are simply barebones and conclusory.

As I recently noted: where a "conspiracy contains only conclusory assertions about the existence and implementation of a collusive and conspiratorial scheme. . ., it necessarily "flounders under the *Iqbal/Twombly* doctrine." *James v. Norfolk Southern Railway Co.*, 2020 WL 1316513, at *4 (N.D. Ohio, 2020) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

8

(2007) ("conclusory allegations of a conspiracy are insufficient."); *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

The situation remains the same after the close of discovery: in response to the defendants' summary judgment motions, the plaintiffs do no more than repackage the conclusory allegations of their complaint. They have produced no evidence, direct or indirect, that, motivated by racial animus, they conspired to deprive plaintiffs of rights protected by the Civil Rights Acts. The elements of such claim are: (1) the existence of a conspiracy; (2) the purpose of the conspiracy was to deprive any person or class of persons the equal protection or equal privileges and immunities of the law; (3) an act in furtherance of the conspiracy; and (4) injury or deprivation of a federally protected right. *E.g., Royal Oak Entertainment, LLC v. City of Royal Oak, Michigan*, 205 Fed.Appx. 389, 399, 2006 WL 3257885, at *8 (6th Cir. 2006) (granting summary judgment in civil rights suit for want of evidence sufficient to meet elements of a conspiracy).

Finally, were I to allow this case to proceed on § 1981 and § 1985 claims as conclusory, insubstantial, and lacking in evidentiary support as here, everyone who acquiesced in an officer's otherwise lawful request for information about the activities of an African-American suspect could, where the officer later independently violated that suspect's civil right, later be held to account. The law is neither that draconian nor that damoclean.

### B. Breach of Contract

Motel 6 has a "privacy policy" posted on its website. The policy states that Motel 6 safeguards personal information it obtains from its guests and will not disclose such information. Plaintiffs claim that giving their registration information to Det. Brotherton violated the policy, thereby breaching its contractual obligations to the plaintiffs.

9

For purposes of this opinion, and without deciding, I assume that the disclosure breached an implied condition of the contract, which Motel 6 otherwise performed.

In Ohio, a party claiming breach of contract must prove that it suffered damages as a result of the breach. *E.g., Carbone v. Nueva Construction Group, L.L.C.,* 83 N.E.3d 375, 380, 2017-Ohio-382, ¶ 14 (Ohio App. 8 Dist., 2017) (citations omitted).

Moreover, the aggrieved party can only recover damages "to the extent that the damages are reasonably certain and reasonably foreseeable." *Westfield Insurance Group v. Silco Fire & Security*, 2019-Ohio-2779, ¶ 29, 2019 WL 2775601, at *5 (Ohio App. 5 Dist. 2019). Plaintiffs have presented no evidence of consequential damages that Motel 6 could reasonably have foreseen. Plaintiffs have not shown that Motel 6 knew, based on Ms. Barber's past performance or otherwise, that she would ignore its privacy policy and disclose plaintiffs' registration information. Indeed, even if it could have foreseen that she would wrongly do so, and also that Det. Brotherton would proceed to plaintiffs' rooms to find out what they were doing, it could not reasonably have anticipated that he would violate the Fourth Amendment rights in the process.

Moreover, "public agencies and officers . . . enjoy a presumption of . . . perform[ing] their duties regularly and in accordance with the law." *City of Cleveland v. Harmon*, 1993 WL 489752, at *5 (Ohio App. 8 Dist.,1993). Plaintiffs have given no reason to believe that Motel 6 had any reason to doubt that that is how Det. Brotherton would conduct himself, even if it had some reason to believe that he would undertake then and there to investigate the plaintiffs.

Plaintiffs have not shown a triable issue of fact as to their breach of contract claim against Motel 6, which is entitled to summary judgment on that claim.

**C. Ohio's Consumer Sales Practices Act –**

**O.R.C. § 1345.02**

Plaintiffs claim that the disclosure of the registration information violated Ohio's Consumer Sales Practices Act, O.R.C. § 1345.02. (CSPA). As the Ohio Supreme Court stated in *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 24, this statute prohibits deceptive and unconscionable practices affecting sales of goods and services to the consumers, like plaintiffs, thereof.

There was nothing deceptive, deceitful, or unconscionable in the interaction between plaintiffs and Motel 6. To be sure, Motel 6 has a privacy policy that it publishes on a website. Not only were plaintiffs unaware of the policy at the time they purchased the services – registering and paying for their rooms – neither Ms. Barber nor Motel 6 deceived them at the time of that transaction about the policy. Ms. Barber could not, as she passed over the keys to the room, knowingly have withheld an intent to disregard the policy. At that moment, on completion of the sales transaction, she could not have anticipated that Det. Brotherton would shortly thereafter ask her for information about it.

Likewise, there was nothing unconscionable about the transaction. Even if, as plaintiffs allege, Ms. Barber violated her employer's privacy policy, there is nothing "shocking to the conscience" about her having done so. It is in Motel 6's interest that it not become a haven for drug trafficking and drug dealers. When Ms. Barber gave Det. Brotherton the information he requested, Motel 6 did not, as a result of that action, violate Ohio's CSPA.

### D. Intrusion Into Privacy

Plaintiffs assert that the officers' unannounced, unbidden, and unwelcome entry gives rise to a cognizable claim for wrongful intrusion into their privacy. In Ohio, the elements of such claim are, *inter alia*: ". . . the wrongful intrusion into one's private activities in such a manner as

11

to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. *E.g., McKee v. McCann*, 102 N.E. 3d 38, 2017-Ohio-4072, ¶ 28 (8th Dist. 2017).

If the jury found that Ms. Green did not consent to the warrantless entry, it could also find that "a person of ordinary sensibilities" would feel outrage, experience mental suffering, and feel humiliated.

The issue then is whether Det. Brotherton is liable for damages or is immune from liability under Ohio's public official's immunity statute, O.R.C. § 2744.03.

Section 2744.03(A) allows, in pertinent part, civil suits "against an employee of a political subdivision to recover damages for . . . loss to person . . . allegedly caused by any act or omission in connection with a governmental or proprietary function. . . ."

The immunity from damage suit is not available under § 2744.03(A)((6)(b) where a public employee's, such as a police officer, "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

If a jury found that Det. Brotherton deprived the plaintiffs of the right to privacy and quiet enjoyment thereof, it could find that they thereby incurred losses to their persons for which they are entitled to recover damages from Det. Brotherton if he were not immune from suit.

With regard to that issue, a rational jury could conclude that his entry, even if not with a malicious purpose, was "in bad faith, [or] in a wanton or reckless manner."

Viewing the evidence most favorably for the plaintiffs, Det. Brotherton is not entitled to summary judgment with regard to plaintiffs' state law claim for intrusion into privacy.

Motel 6 could not reasonably have anticipated that Det. Brotherton would disregard the privacy it had ensured to the plaintiffs. Thus, the plaintiffs have failed to state a claim for invasion of privacy as to Motel 6.

### E. Intentional Infliction of Emotional Distress

Plaintiffs claim that defendants' actions constituted an intentional infliction of emotional distress. The elements of this tort are: 1) an intent to cause, or reason to know that one's acts would result in, serious emotional distress; 2) those acts were so extreme and outrageous as to be beyond all possible bounds of decency and completely intolerable in a civilized community; 3) those acts proximately caused psychological injury; and 4) the mental anguish was of a degree that no reasonable person could be expected to endure such distress. *See e.g, McKee v. McCann*, 102 N.E.3d 38, 2017-Ohio-4072, ¶ 28 (8th Dist. 2017).

Plaintiffs cannot prevail because there is no evidence as to any of those elements: none as to an intent to cause serious emotional distress – *i.e.*, distress beyond that which anyone would feel on having four officers bust into a motel room. Though a jury might view such conduct beyond "the bounds of decency" and "intolerable in a civilized community," there is no evidence of any psychological injury or that a reasonable person could not have endured whatever mental anguish endured.

The lack of evidence as to most of those elements is not just clear as to Det. Brotherton – that lack is particularly striking as to Ms. Barber and Motel 6. As already discussed, neither she nor it could have foreseen that Det. Brotherton and his fellow officers would violate the Fourth Amendment, much less that those defendants intended to cause emotional distress.

Both defendants are entitled to summary judgment on plaintiffs' claim of intentional infliction of emotional distress.

### F. Vicarious Liability

Plaintiffs claim that Motel 6 is liable for the alleged consequences of Ms. Barber's disclosure of plaintiffs' registration information. Because that disclosure did not constitute a

13

legally cognizable wrong, there can be no vicarious liability as to her employer or its affiliated entities. The corporate defendants are, therefore, entitled to summary judgment.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendant Brotherton's motion for summary judgment (Doc. 51) be, and the same hereby is granted as to all claims except those arising under the Fourth Amendment and state law intrusion into privacy;

2. Defendant Brotherton's claim of qualified immunity as to those claims be, and the same hereby is denied; and

3. The motion of the Motel 6 entities (Doc. 56) be, and the same hereby is granted.

The Clerk shall forthwith set a status/scheduling conference.

So ordered.

/s/ James G. Carr<br>
Sr. U.S. District Judge